# Harrisburg National Bank, Appellant, *v.* Elizabeth Reily Bradshaw.

*Married women—Accommodation indorser—Renewal of antenuptial indorsement—Act of June 8, 1893.*

A woman who has indorsed a promissory note for the accommodation of another, before her marriage, may after marriage renew such indorsement, and she will not be relieved from liability by the act of June 8, 1893, P. L. 345, which provides that she may not " become accommodation endorser, maker, guarantor or surety for another." In such a case she does not enter a new obligation for the benefit of another, but she continues and extends for her own benefit an existing obligation by which she was bound. It is immaterial that the bank failed to protest the original note, or that there were intervals of days or even weeks between the maturity of some of the renewal notes indorsed after marriage and the renewal thereof, if it was the intention of the parties that there should be no gap, and that the married woman was to continue her obligation entered into before marriage.

Where a married woman has power to renew an indorsement after marriage she may do it by her attorney, and if the power under which her attorney acts is not broad enough, it is competent for her to ratify and confirm his act.

Argued June 2, 1896. Appeal, No. 16, May T., 1896, by plaintiff, from judgment of C. P. Dauphin Co., June T., 1895, No. 408, on trial by court without a jury. Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Foreign attachment in assumpsit on promissory note.

SIMONTON, P. J., found the facts to be as follows:

This case was tried by the court without a jury as provided by the act of April 22, 1874. It is an action in which the plaintiff seeks to recover from the defendant the sum of $10,817.97, ·with interest from December 20, 1894, upon the following

## FACTS.

1. In July, 1889, Miss Elizabeth Reily indorsed a note for $10,000 for the accommodation of her brother, John W. Reily, which was discounted for him by the Harrisburg National Bank,

with knowledge that she was an accommodation indorser, and when this note matured on November 4, 1889, she in like manner indorsed a like note in renewal of the first. Before the second note matured she became the wife of Walter J. Bradshaw and executed jointly with him a power of attorney to G. M. McCauley, which is attached to plaintiff's statement filed in this case, and is hereby referred to and made part of this finding.

2. After her marriage and the execution and delivery of this power of attorney she removed to Helena, Montana, where she resided when the second note matured on March 7, 1890. On that day the attention of her attorney was called to this note by the president of the bank, who asked him to indorse a note in renewal. Mr. McCauley expressed doubt whether he had authority so to do, and the president said, if he would indorse it, it would be satisfactory, which he then did. He had no knowledge of the execution of the note until this time, and Mrs. Bradshaw had not mentioned it to him nor given him any authority to act for her except the power of attorney above referred to. No protest or notice of nonpayment was made or given as to the note which then matured. At this time the balance to the credit of John W. Reily on the books of the bank was $2,558.06.

3. Thereafter at intervals of four months until August 17, 1894, notes each in renewal of the preceding one were given to the bank with the accommodation indorsement of Elizabeth R. Bradshaw, the defendant. None of these renewal notes was protested, and there were intervals of, in some cases, two or three days, and in others as many weeks, between the maturity of a given note and the indorsement and delivery of the renewal. Most of the notes when matured and renewed were delivered to the attorney of John W. Reily and Mrs. Bradshaw, and the renewal interest was paid by him, on account of John W. Reily.

4. When the last note matured on December 20, 1894, it amounted with interest to $10,817, and it was duly protested and notice of nonpayment was sent to the defendant.

The court entered judgment for defendant.

*Error assigned* was entry of judgment for defendant.

*C. L. Bailey*, of *Wolfe & Bailey*, and *Robert Snodgrass*, for appellant.—All of the notes subsequent to the original were "renewals" and were so marked. They were not payments in any sense, nor were they shown to have been tendered or accepted as such. They could not have been considered as payments unless it was clearly shown that they were so intended: Randolph on Com. Paper, sec. 1511; Daniel on Neg. Instruments, sec. 1266; Ritter v. Singmaster, 73 Pa. 400 ; Brown v. Scott, 51 Pa. 357. If the renewals in question were not payments, but operated simply as a suspension of the right of action, the obligation evidenced by the contract remained, and necessarily related back to the origin of the debt: Overholt v. Mt. Pleasant Bank, 82 Pa. 490; Stephens v. Bank, 88 Pa. 157. If this contention be sound, it seems to follow that the true test of liability in the present case must depend upon the question whether or not an antenuptial contract of indorsement falls within the prohibition of the acts of 1887 and 1893. It may be safely assumed that these acts did not impose any additional restrictions upon married women. On the contrary, their plain import is to enlarge the powers of a feme sole except in certain specified particulars: Real Est. Co. v. Roop, 132 Pa. 496; Koechling v. Henkel, 144 Pa. 215.

Under the proviso to the act of April 11, 1848, a married woman was liable for a debt contracted by her before marriage, but she could not give a bond or confess judgment in satisfaction of such debt: Glyde v. Keister, 32 Pa. 87 ; Finley's App., 67 Pa. 453. Since the acts of 1887 and 1893, she can confess a judgment, or do any other act in recognition of her liability in such cases, to the same extent as if she were feme sole : Adams v. Grey, 154 Pa. 258 ; McCormick v. Buttorf, 155 Pa. 331; Mitchell v. Richmond, 164 Pa. 566 ; Mahon v. Gormley, 24 Pa. 80.

Demand and notice are not parts of the contract, but mere steps in the remedy, which may be waived by the indorser: Barclay v. Weaver, 19 Pa. 396. If the indorser had remained a feme sole, she would undoubtedly have been bound, and if in case the last note had been lost she had been sued on the original note or any of the intermediate renewals, her conduct would clearly have amounted to a waiver of demand and notice : Sherer v. Bank, 33 Pa. 134.

*Samuel J. M. McCarrell*, with him *Jno. A. Herman*, for appellee.—It is not contended that an antenuptial contract cannot be enforced against a married woman. The argument of the learned counsel for appellant seems to be based upon the theory that the antenuptial contract of accommodation indorsement fixed upon the appellee an absolute liability to pay the note of November 4, 1890. No such liability, however, was created by the indorsement. Her liability, as is well settled, was only conditional or contingent: McKinney v. Crawford, 8 S. & R. 357; Brenzer v. Wightman, 7 W. & S. 266.

In the light of these, and many other decisions of like import which might be cited, we confidently contend that the contingent liability arising from the accommodation indorsement of the appellee, dum sola, never became fixed and absolute. The failure to give due notice of the nonpayment of the note, maturing March 7, 1890, effectually discharged her from her contingent liability. The subsequent renewals signed by her were " new undertakings," which she was not competent to make, for the acts of 1887 and 1893 expressly continue the disability of a married woman to " become the accommodation endorser, guaranty or surety for another : " Patrick & Co. v. Smith, 165 Pa. 526.

OPINION BY MR. JUSTICE FELL, October 5, 1896 :

The question presented by this case relates to the power of a married woman to bind herself by the renewal of an accommodation indorsement made before her marriage. The defendant, when single, indorsed a promissory note at four months for $10,000 for the accommodation of the maker, her brother. Once before marriage she renewed her indorsement, and after her marriage she renewed it as the notes became due at intervals of four months for the period of nearly five years. The last of the series of notes was protested and this suit brought upon it. The statement was drawn and the case presented by the plaintiff upon the theory that the notes given before marriage and the renewals after marriage were parts of a continuing transaction, and that the defendant's liability was to be drawn from the whole of it.

The marriage of the defendant did not affect her relation to obligations into which she had previously entered so as to

release her from on antenuptial contract, and it is conceded that the protest of the first note which became due after her marriage would have fixed her liability as to it; but it is claimed that she was without power after marriage to renew her indorsement, as she is not permitted by the act of June 8, 1893, to become an accommodation indorser. The learned judge before whom the case was tried without a jury held as conclusions of law that the defendant was discharged from liability upon the note indorsed by her before marriage and which matured thereafter by the failure of the bank to protest it for nonpayment; that the failure to protest was not waived by the indorsement of new notes from time to time, and that she was not bound by the indorsements made after marriage for the reason that she was incompetent to incur liability as an accommodation indorser.

The primary question is whether a married woman is bound by the renewal of an existing valid contract entered into before marriage when the contract is one which the law does not authorize her to make after marriage. The act of 1893 gives a married woman the same right to acquire, control and dispose of property and to make contracts in relation thereto that she possessed before marriage. The limitation placed upon the power conferred is that she " may not become accommodation endorser, maker, guarantor or surety for another." The purpose of the limitation is to protect her from contracts not connected with the management of her estate and from which she could derive no advantage. As to contracts relating to her own estate or affairs the existing restraint was removed; it remains as to a class of contracts into which she might be induced or constrained to enter for the benefit of others.

The defendant was liable on the indorsement of the note which became due two months after her marriage. True, her liability was conditional only, but it would have been fixed and made absolute by protest and notice. By the renewal of her indorsement she did not enter into a new obligation for the benefit of another, but she continued and extended for her own benefit an existing obligation by which she was bound. By so doing she did not " become an accommodation endorser " and enter into a new forbidden contract. The contract already existed, and its continuance was for the relief and benefit of

her estate. A construction of the act which denies a woman after marriage the power to continue an antecedent obligation would in many cases impose a hardship upon her. If she cannot continue, the alternative is to pay, however great may be the loss to her estate. Such a construction is not required by the letter of the act, and would not be in harmony with its spirit. The proviso of the act of 1887, which is incorporated into the act of 1893, is for the protection of women after marriage from a class of contracts in which they have no direct interest, and from which their estates can derive no advantage. The renewal of an obligation contracted before marriage, we think, does not come within the meaning of the act, although the obligation may belong to the prohibited class. The bank could have bound the defendant to the payment of the note absolutely by protest. She could have bound herself by a waiver of protest. The renewal of her indorsement at the maturity of the note was but the recognition and continuance of an obligation which she had before assumed and which was binding upon her.

Whether the power of attorney given by the defendant to G. M. McCauley authorized the indorsement made by him of the note of March 7, 1890, is not material. If she had power to renew the indorsement after marriage she could do it by her attorney, and if the power under which he acted was not broad enough it was competent for her to ratify and confirm his act. This she did.

The indorsement of notes in renewal by the defendant after she had been released from liability on preceding notes because of the failure of the bank to protest them for nonpayment was not under the circumstances the assumption of a new liability as accommodation indorser. After her marriage she resided in Montana. The notes were sent to her by her attorney for indorsement. Most of them were returned to the bank before the maturity of the notes which they were intended to renew. The bank relied upon her carrying out in good faith the understanding which existed between them as to renewals. She did carry it out. It was not at any time the intention of either party that she was assuming a new obligation for her brother; but it was the intention of both that the renewals should be as of the dates of the notes renewed, that there should be no gap, and that she

was continuing her own obligation entered into before marriage by which she was bound.

While the defendant was not authorized after marriage to enter into a new contract as accommodation indorser, it was competent for her to continue her valid antenuptial contract. In dealing with this the act of 1893 imposed no limitation upon her power. She could have taken advantage, as could any indorser, of the failure of demand and notice by the holder of the note, or she could overlook the omission and recognize and reassert her liability by a new indorsement. By so doing she was not entering into a new contract not authorized by the act.

Substantially the same principle was asserted in Brunner's Appeal, 47 Pa. 67. Under the act of 1848 a married woman was liable on her antenuptial contract, but was without power to confess judgment for a debt due by her. It was held in the case cited that she could agree to the revival of a judgment entered after marriage by virtue of a power of attorney signed by her before marriage, for the reason that it was not the creation of a new liability but the renewal of one already existing. We are of opinion that under the findings of fact judgment should have been entered for the plaintiff.

The judgment is reversed and set aside, and now, October 5, 1896, judgment is entered for the plaintiff for the amount of the note of August 17, 1894, with interest and costs of protest, $12,202.06.